**Ann B. PERSON, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. 5:98–CV–756–BR.**

United States District Court, E.D. North Carolina, Western Division.

Aug. 19, 1999.

---

James P. West, Raleigh, NC.

Roger Wiles, Jamestown, NC.

## JUDGMENT

BRITT, Senior District Judge.

**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED, ADJUDGED AND DECREED** that plaintiff's motion for summary judgment is DENIED, defendant's motion for summary judgment is ALLOWED, and this action is DISMISSED.

### ORDER

This matter is before the court on cross motions for summary judgment. Responses to the respective motions were filed by both parties and the defendant filed a reply to plaintiff's response. This matter is ripe for decision.

### I. BACKGROUND

Since 1980, plaintiff Ann Person has been employed as a full-time teacher's assistant working a schedule of 7:30 a.m. to 3:30 p.m., Monday through Friday. (Pl.'s Dep. at 12–13) In December of 1990, plaintiff was hired as a part-time sales associate by Wal–Mart in its store in Oxford, North Carolina. (Compl.¶ 1) Upon beginning her employment with Wal–Mart, plaintiff advised management that due to a visual condition known as keratoconus, she was unable to work past 10:00 p.m. (Compl.¶¶ 7, 8) This condition causes plaintiff eye pain, blurring, and dizziness beginning around 10:00 p.m. (Compl.¶ 8) Wal–Mart management accommodated this request until 24 June 1997, when store manager Michael Seabrooks advised plaintiff not to return to work until she was able to work past 10:00 p.m. (Compl.¶¶ 11, 12) Plaintiff did not return to work until 5 October 1997, when a new store manager allowed her to work the schedule she requested. (Compl.¶ 15)

On 12 September 1997, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). (Compl.¶ 4) On 2 July 1998, plaintiff received a "Notice of Right to Sue" from the EEOC. (*Id.*) On 30 September 1998, plaintiff filed a complaint in this court alleging that during the period of 24 June 1997 to 5 October 1997, she was wrongfully discharged due to her condition. She seeks relief under both the Americans with Disabilities Act (ADA) and a supplemental North Carolina state law claim for wrongful discharge. (Compl.¶¶ 17–27)

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993). Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Id.* In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991).

### III. DISCUSSION

Plaintiff asserts that Wal–Mart's failure to allow her to work the schedule she requested between 24 June 1997 to 5 October 1997 constituted a wrongful discharge. To establish a *prima facie* case of

discriminatory discharge under the ADA, a plaintiff must prove: (1) she has a "disability;" (2) she is a "qualified individual;" and (3) in "discharg[ing]" her, her employer "discriminate[d] against [her] because of [her] disability." 42 U.S.C. § 12112(a); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir.1997).

In seeking summary judgment, defendant asserts that plaintiff's condition does not qualify as a "disability" for which she is entitled to ADA protection because her visual impairment does not substantially limit her ability to see.[1] Under the ADA:

(2)The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The provision in section (A) is the definition relevant to this case. There appears to be is no dispute that Person's keratoconus is a physical impairment within the meaning of the above provision. *See* 29 CFR § 1630.2(h)(1) (1998) (defining "physical impairment" as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: . . . special sense organs"). Furthermore, there is no dispute that seeing is a "major life activity." *See* 29 CFR § 1630.2(i) (listing seeing as an example of a major life activity); *see also Albertsons, Inc. v. Kirkingburg*, —— U.S. ——, 119 S.Ct. 2162, 2167, 144 L.Ed.2d 518 (1999). Therefore, the remaining question before this court is whether Person's keratoconus "substantially limits" her ability to see.

Because the statutory definition of disability requires that any impairment be evaluated "with respect to an individual," the inquiry must focus on whether plain-

tiff's condition substantially limits her own ability to see as opposed to any generally known limitations of her specific condition. 42 U.S.C. § 12102(2); *see Sutton v. United Air Lines, Inc.*, —— U.S. ——, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999) (whether a person has a disability under that ADA is an individualized inquiry); *Albertsons*, —— U.S. at ——, 119 S.Ct. at 2169 (the ADA requires plaintiffs to prove a disability by offering evidence that the extent of the limitation is substantial in terms of their own experience). The EEOC regulations define the terms "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 CFR § 1630.2(j). The Supreme Court has further discussed the definition of "substantially limits" as follows:

The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.' *See* Webster's Third New International Dictionary 2280 (1976) (defining 'substantially' as 'in a substantial manner' and 'substantial' as 'considerable in amount, value, or worth' and 'being that specified to a large degree or in the main'); *see also* 17 Oxford English Dictionary 66–67 (2d ed.1989) ('substantial': '[r]elating to or proceeding from the essence of a thing; essential'; 'of ample or considerable amount, quantity or dimensions'). The EEOC has codified regulations interpreting the term 'substantially limits' in this manner, defining the term to mean '[u]nable to perform' or '[s]ignificantly restricted.' *See* 29 CFR §§ 1630.2(j)(1)(i), (ii) (1998).

---

1. Although defendant also contends that plaintiff's visual condition does not limit her ability to work, plaintiff responds that she does not allege that it limits her ability to work, only that it limits her ability to see. Thus, this court will not address defendant's additional argument with respect to limitations on plaintiff's ability to work.

*Sutton,* —— U.S. ——, 119 S.Ct. 2139 at 2150–2151.

■ Having reviewed the exhibits submitted in support of both motions, this court finds that plaintiff has failed to generate a genuine issue as to whether her impairment substantially limits her ability to see. Plaintiff's testimony, as well as the affidavit and report of ophthalmologist, Dr. Benjamin Cooperman, indicates that plaintiff's condition causes her pain, redness, dryness, and blurred or double vision. (Pl.'s Dep. at 85, Cooperman Aff. at 1) The evidence further indicates that although plaintiff may begin to experience these symptoms at approximately 4:00 to 5:00 p.m., they only begin to limit her ability to see at around 10:00 p.m. (Pl.'s Dep. at 85, 118) Plaintiff also testified that she experiences eye infections once every four or five months, but that these infections usually do not cause her to be absent from work. (Pl.'s Dep. at 53) Thus, the evidence offered indicates that the total duration of the plaintiff's visual impediment is limited to after 10:00 p.m. and to an occasional eye infection. This limitation is not a significant restriction when compared to the average person, especially given that persons without keratoconus may experience compromised vision to some degree after working from 7:30 a.m. to 10:00 p.m. *See* 29 C.F.R. § 1630.2(j).

Not only is the duration of plaintiff's visual limitation relatively short, but it appears to interfere minimally with any of the visual aspects of plaintiff's daily activities. Plaintiff works as a full-time teacher's assistant beginning at 7:30 a.m. and ending at 3:30 p.m., five days a week. (Pl.'s Dep. at 12, 13) Her duties as a teacher's assistant include reading, reviewing, and grading student's work, and previewing instructional videotapes. (Pl.'s Dep. at 15–30.) On the evenings that she works at Wal–Mart, she works from 5:00 p.m. to approximately 10:00 p.m. (Pl.'s Dep. at 79, 84) Plaintiff testified that her visual impairment does not interfere with her work as a teacher's assistant except when she develops an eye infection. (Pl.'s Dep. at 108, 52–53) She also testified that it does not interfere with her performing her duties as a salesperson at Wal–Mart. (Pl.'s Dep. at 109) In addition, plaintiff drives herself to and from both jobs. (Pl.'s Dep. at 56, 109) Aside from the limitation on her ability to see beginning around 10:00 p.m., plaintiff does not allege that there are any other visual aspects of either her work or social life that are affected by her visual impairment. "[A] visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity." *Cline v. Fort Howard Corp.,* 963 F.Supp. 1075, 1080 (E.D.Okla. 1997); *see also Roth v. Lutheran Gen'l Hospital,* 57 F.3d 1446, 1454–56 (7th Cir. 1995) (holding that a doctor with strabismus (crossed eyes) was not "disabled" because he was able to read, write, lecture, and successfully earned both a pharmacy degree and a law degree before entering medical school); *Overturf v. Penn Ventilator Co., Inc.,* 929 F.Supp. 895, 898 (E.D.Penn.1996) (plaintiff was not substantially limited in seeing despite double vision and lack of peripheral vision where he was able to drive a car, watch television, read, and work).

Therefore, while the evidence indicates that plaintiff does experience some limitation in her ability to see after 10:00 p.m., this court concludes that any such limitation is not to a "substantial" degree so as to qualify as a "disability" under the ADA. *See* 42 U.S.C. § 12102(2). Consequently, plaintiff's ADA claim set forth in count one of the complaint will be dismissed.

■ In addition to her claim under the ADA, plaintiff raises a claim for wrongful discharge in violation of public policy pursuant to N.C .Gen.Stat. § 143–422.2. However, this court, in its discretion, declines to exercise supplemental jurisdiction over this claim. 28 U.S.C. § 1367(c)(3). Therefore, plaintiff's state law claim set forth in

count two will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED, defendant's motion for summary judgment is ALLOWED, and plaintiff's claims are DISMISSED.