**Christopher C. PHILLIPS, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. Civ.A. 98–1032–RV–M.**

United States District Court,
S.D. Alabama,
Southern Division.

Nov. 29, 1999.

---

6. 28 U.S.C. § 1602 *et seq.*

J. Charles Wilson, Mobile, AL, for Christopher Phillips, plaintiff.

Charles F. Carr, Daphne, AL, Susan Klooz, Gregory S. Muzingo, Bentonville, AR, for Wal–Mart, defendant.

## MEMORANDUM OPINION AND ORDER

VOLLMER, District Judge.

Plaintiff Christopher C. Phillips brings this action against defendant Wal–Mart Stores, Inc. under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Phillips contends that he was subjected to a hostile work environment and was eventually fired by Wal–Mart because of a disability, which he characterizes as a traumatic brain injury caused by a near-fatal automobile accident. Wal–Mart has filed a motion for summary judgment as to all claims, arguing, *inter alia,* that Phillips has not established a prima facie case of disability discrimination because his traumatic brain injury does not constitute a disability recognized by the ADA. After carefully reviewing the law and considering the submissions of the parties,[1] the court agrees that Phillips has not established that he has a disability within the meaning of the ADA. Accordingly, Wal–Mart's motion for summary judgment is due to be granted.

## I. BACKGROUND

The material facts are not in dispute.[2] Wal–Mart hired Phillips on July 27, 1993. This was Phillips' first full-time job since suffering a traumatic brain injury in a 1976 automobile accident. As a result of that accident, Phillips was in a coma and on life support for over four months. He then spent several weeks in rehabilitation and had to re-learn how to walk, talk, read and otherwise care for himself. Phillips did not work for the next fourteen years, depending instead upon social security and his family for financial support. Soon after getting married in 1990, however, Phillips applied for vocational training with the Alabama Department of Rehabilitation Services ("ADRS"). He attended classes for the next eight weeks, where he developed his coordination and behavioral skills. Phillips then obtained a part-time job through ADRS with a local cleaning service. In 1991, he began working as a part-time janitor for Sears, Roebuck & Co. ("Sears"), but his position was eliminated in mid–1993 when Sears contracted with an outside janitorial service. ADRS then helped Phillips obtain employment at the Wal–Mart store on Schillinger Road in Mobile, Alabama.

Wal–Mart initially assigned Phillips to the candy department as a nighttime stocker. His duties included stocking shelves, helping customers and checking for spills in his department. He earned approximately $5.00 per hour. His first annual evaluation, covering the period from August 1993 to June 1994, rated Phillips' performance as "Standard," an average rating. Phillips also received a raise, which increased his wage to $5.25 per hour. The evaluation noted that Phillips was trying hard to do a good job, but it stated that he was not working fast enough to maintain the volume of stocking required by the candy department.

Shortly thereafter, Phillips was transferred to a position with the night receiving department, which unloads "break-packs," or cartons of freight containing new merchandise, throughout the store. His new supervisor was Judy Callen. For the first few months, Phillips performed well in night receiving. But as time went on, his productivity began to decrease. For example, Phillips' second annual evaluation, which encompassed the period from July 1994 to June 1995, noted that Phillips

1. The court has considered Wal–Mart's "Motion for Summary Judgment" (Doc. 14); the "Brief in Support of Defendant Wal–Mart Stores, Inc.'s Motion for Summary Judgment" (Doc. 15); Phillips' "Response in Opposition to Defendant's Motion for Summary Judgment" (Doc. 18); Wal–Mart's "Reply to Plaintiff's Response in Opposition to Defendant Wal–Mart Stores, Inc.'s Motion for Sum-

mary Judgment" (Doc. 20); and the parties' Joint Pretrial Document (Doc. 21).

2. Where discrepancies exist in the record, the court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to Phillips, the non-moving party. *See Swain v. Hillsborough County Sch. Bd.,* 146 F.3d 855, 857 (11th Cir.1998).

was not unloading the minimum number of breakpacks required by Wal–Mart policy. Phillips was advised to improve his productivity, his dependability and his sense of urgency in his work. Callen rated Phillips' performance as "Standard" and his wage was increased to $5.95 per hour. In a written response to this evaluation, Phillips stated that he was going to improve his performance, raise his personal goals and increase his knowledge of freight.

At some point over the next year, Peggy Black replaced Callen as the night receiving supervisor. She rated Phillips' performance as "Above Standard" in his third annual evaluation, which covered July 1995 through June 1996, and his pay was increased to $6.25 per hour. Black noted, however, that Phillips' productivity was not sufficient. She instructed Phillips to work with a greater sense of urgency and to be more results driven. In the section of the evaluation in which employees are invited to identify goals and objectives that would help them meet identified areas needing improvement, Phillips simply wrote "Unknown."

When no improvement was apparent in Phillips' productivity by September 1996, Black gave Phillips a written Performance Coaching Form. This "written coaching" stated that Phillips still showed no sense of urgency or productivity and that store morale was suffering because his co-workers resented having to "pick up the slack." Black told Phillips that if he did not become more productive, he would receive a second written warning. Phillips signed the form, but he did not provide a written response.

Phillips' productivity did not increase. Accordingly, Black gave him a second written coaching on October 11, 1996. Black essentially reiterated her comments from the first written coaching, which focused on Phillips' lack of urgency and unproductiveness. The second written coaching also expressed Black's concern that Phillips' non-productive work habits were causing other employees to "think they can do the same." In response, Phillips wrote

that he would "Satisfy [Black's and] Wal–Mart's desi[re]s for fulfillment of their desires!"

Despite this reassurance, Black's desires apparently went unfulfilled—she gave Phillips a third written coaching just four days later. According to Black, Phillips had done a poor job of arranging new merchandise he had unloaded for the pet department. These items, Black wrote, were simply "thrown onto the shelves and risers. It was awful." She informed Phillips that he had to improve his job performance and warned him that similar actions would not be tolerated in the future. Phillips signed the form but again offered no written response.

Phillips contends that he received these negative reviews because Black had a personal grudge against him. According to Phillips, Black was often hostile toward him and frequently made fun of his speech. In September 1996, for example, Phillips asked Black for a promotion, telling her that ADRS was testing his skill level for such an advancement by means of a "brain scan" or a "brain test." In front of several employees, Black allegedly responded: "Well, don't they know your brains ran out your fingers a long time ago?" Phillips insists that Black continually berated him for being "too slow," would often threaten to fire him, and even once wrote him up for talking to himself. After Phillips' family complained to upper management about Black's abusive behavior, Phillips was transferred to a day-shift position in the store's maintenance department.

Although Black was no longer his supervisor, Phillips contends that he was still subjected to harassment during the time he worked as a maintenance associate. According to Phillips, his co-workers made fun of him over the store intercom, told him to clean the restrooms when they did not need cleaning and laughed at him behind his back. After he complained to management, Phillips asserts that the incidents simply increased. Phillips also alleges that Black continued to harass him

about the quality of his work and that the store manager, Ronald Ferguson, once even yelled at him for suggesting that larger doors would be beneficial to the employees.

Nonetheless, Phillips continued to have performance issues as a maintenance associate. Ferguson asserts, and Phillips does not dispute, that Phillips needed constant reminders to perform his job duties and that Phillips frequently failed to perform those duties despite the reminders. Ferguson further contends that Phillips reacted negatively to attempts to coach him concerning his job performance and that on one occasion, he hung a torn piece of cardboard on his maintenance cart which read "I quit—Two Weeks Notice." Phillips admits that he made the sign, but he contends that he was only expressing his frustration and that he had no intention of quitting. Phillips also disputes the assertion that his attitude was worsening. He claims that he did his very best to maintain a good attitude, and he correctly notes that he was never written up for having a poor attitude. Regardless, on June 5, 1997, Ferguson concluded that Phillips' performance and attitude had worsened to the point that it warranted termination. Accordingly, Ferguson met with Phillips the next day and terminated his employment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In reviewing a motion for summary judgment, the court must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Swain*

*v. Hillsborough County School Bd.,* 146 F.3d 855, 857 (11th Cir.1998).

The movant seeking summary judgment has the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the non-moving party must set forth specific facts demonstrating that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists for trial if a reasonable jury could return a verdict in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

To avoid an adverse ruling on a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [his] pleading." FedR. Civ.P. 56(e). Nor may the non-moving party defeat a summary judgment motion by simply providing a mere "scintilla" of evidence. *See Burger King Corp. v. Weaver,* 169 F.3d 1310, 1321 (11th Cir.1999). Instead, there must be a genuine factual conflict in the evidence to support a jury question. *See Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999). With this standard in mind, the court turns to address Wal–Mart's motion for summary judgment.

## III. DISCUSSION

Title I of the Americans with Disabilities Act of 1990 prohibits a covered employer[3] from discriminating against a qualified individual with a disability because of that person's disability. *See Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1601, 143 L.Ed.2d 966 (1999). A "qualified individual with a dis-

---

**3.** Specifically, the ADA applies to any employer "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A). There is no dispute that Wal–Mart meets this definition.

ability" is any person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff alleging discrimination in violation of the ADA bears the burden of establishing a prima facie case. *See Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir.1996).

■ To establish a prima facie case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that he: (1) has a disability; (2) is a qualified individual; and (3) was subjected to unlawful employment discrimination because of his disability. *See Hilburn v. Murata Elec. N. Am., Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999); (citing 42 U.S.C. § 12112(a)). Thus, to prevail in his hostile work environment and wrongful discharge claims, Phillips must first satisfy each of these prima facie elements. But for the reasons given below, the court concludes that Phillips has failed to demonstrate that he has a disability under the ADA.

The determination of whether a person has a disability within the meaning of the ADA must be conducted on a case-by-case basis. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2147, 144 L.Ed.2d 450 (1999) ("whether a person has a disability under the ADA is an individualized inquiry"); *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (1998) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."). The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, to be "disabled" within the meaning of the ADA, Phillips must have an actual disability, have a record of a disability, or be regarded as having a disability. Because Phillips fails to

specify which statutory definition underlies his claim, the court will address each definition in turn.

### A. Whether Phillips has an Actual Disability

■ The mere presence of an impairment is not, by itself, sufficient to constitute a disability under the ADA. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir.1998). Rather, a disability exists only where the impairment substantially limits one or more major life activities. *See Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 2168, 144 L.Ed.2d 518 (1999). The Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. *See Bragdon v. Abbott,* 524 U.S. 624, ——, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). First, the court must ascertain whether the plaintiff suffers from a physical or mental "impairment." Next, the court must identify whether the life activity purportedly impacted by that impairment is a "major life activity." Finally, the court must determine whether the claimed impairment "substantially limits" that major life activity. *See id.*

### 1. Impairment

In addressing the first step of this inquiry, the court notes that the ADA does not define the term "impairment." However, the Equal Employment Opportunity Commission ("EEOC") has promulgated regulations upon which the court may rely for guidance in interpreting the ADA. *See Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 911 (11th Cir.1996) (courts may seek direction from EEOC regulations implementing Title I of the ADA). Those regulations define a "physical impairment" as a "physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-

urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (1998). A "mental impairment" is defined as a "mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2) (1998).[4]

Phillips alleges that, as a result of his traumatic brain injury, he has trouble concentrating, his speech is slow, he has difficulty with fine motor skills, he often forgets things, he tires easily, and he experiences dizziness, blurred vision and debilitating headaches. While Phillips does not expressly identify these symptoms as "impairments" under the ADA, Wal–Mart has stated that it "does not dispute that [Phillips] has physical and mental impairments as a result of the traumatic brain injury he suffered in 1976."[5] The court will thus assume for the purpose of this analysis that the physical and mental effects of Phillips' traumatic brain injury are impairments within the meaning of the ADA.

### 2. *Major life activity*

▮ The court must next determine whether any of the life activities purportedly impacted by Phillips' physical and mental impairments are "major life activities." The ADA does not define this term,

but the EEOC regulations explain that major life activities are basic activities that the average person in the general population can perform with little or no difficulty. *See* 29 C.F.R. pt. 1630, App. § 1630.2(i) (1998). Major life activities include—but are not limited to—activities such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1998); *see also* 29 C.F.R. pt. 1630, App. § 1630.2(i) (1998) (list of enumerated major life activities is not exhaustive). In determining whether a non-enumerated activity is a major life activity, courts should ask whether the activity is significant within the meaning of the ADA rather than whether the activity is important to the particular plaintiff. *See Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 152 (2d Cir.1998); *see also Bragdon,* 118 S.Ct. at 2205 ("the touchstone for determining an activity's inclusion under the statutory rubric is in its significance").

▮ Phillips has not clearly articulated which major life activities were purportedly impacted by the physical and mental impairments caused by his traumatic brain injury. However, he seems to argue that these impairments impact his ability to concentrate, learn, speak, see, perform manual tasks, eat and drink.[6] The court

---

**4.** These definitions are not comprehensive. Rather, the impairments enumerated within the EEOC regulations are "a representative list of disorders and conditions constituting physical impairments, including such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, and ... drug addiction and alcoholism." *Bragdon,* 118 S.Ct. at 2202 (internal quotations omitted).

**5.** Reply at 4.

**6.** The court has construed these major life activities from Phillips' declaration, which states in relevant part:

At the time I went to work for Wal–Mart I was substantially limited in the following major life activities: I had substantial trou-

ble concentrating and learning (it took me a very long time to learn the layout of the store, where to place merchandise, I often forgot things I had learned or forgot what I was doing in the middle of doing it as well because of my closed head injury and its continuing effects); my speech was very slow and it took me a long time to convey what I was trying to say; I became tired very easily and would experience dizziness as a result (this caused me to have to stop and regain my composure often); I experienced blurred vision and on occasions would even my lose my vision altogether because of my brain injury; I experienced debilitating headaches at times; and I had significant difficulty with spasms in my arms and hands which kept me from performing manual tasks like most people can. I have difficulty in eating and drinking because of the lack of coordination.

agrees that these activities are major life activities under the ADA—with one exception. Concentration is not a major life activity. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999). As the *Pack* Court explained, the inability to concentrate may be significant to a plaintiff in that it affects one or more of his major life activities, such as working, learning or speaking, but concentration is not an "activity" in and of itself. *Id.* Thus, because concentration is not an activity, it cannot be one of Phillips' "major life activities" within the purview of the ADA.

As to the remaining activities articulated by Phillips, however, the court has little trouble concluding that they are "major life activities" within the meaning of the ADA. The EEOC regulations explicitly identify four of these activities—learning, speaking, seeing and performing manual tasks—as major life activities. *See* 29 C.F.R. § 1630.2(i) (1998). The ability to eat and drink, while not specifically enumerated within the EEOC regulations, are also major life activities because they are basic activities that the average person in the general population can perform with little or no difficulty. *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999). The court therefore agrees with Phillips that learning, speaking, seeing, performing manual tasks, eating and drinking are major life activities within the purview of the ADA.

### 3. *Substantial limitation*

The final step in this actual disability analysis is to determine whether Phillips' physical and mental impairments "substantially limit" any of these major life activities. Because the ADA does not define this term, the court again turns to the EEOC regulations for guidance. According to those regulations, a physical or mental impairment is "substantially limiting" if the individual is either "[u]nable to perform a major life activity that the average person in the general population can per-

form" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1) (1998). In further discussing the "substantially limits" definition, the Supreme Court has noted that the term "substantially" suggests a limitation that is "considerable" or "specified to a large degree." *See Sutton*, 527 U.S. at ——, 119 S.Ct. at 2150 (citing Webster's Third New International Dictionary 2280 (1976); 17 Oxford English Dictionary 66–67 (2d ed.1989)).

Wal–Mart argues that Phillips' physical and mental impairments do not rise to the level of a disability under the ADA because they do not substantially limit any of his major life activities. In determining whether an impairment is substantially limiting, courts look to: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or expected long-term impact of the impairment. *See Gordon*, 100 F.3d at 911 (citing 29 C.F.R. § 1630.2(j)(2) (1998)). With these principles in mind, the court turns to address whether the effects of Phillips' traumatic brain injury substantially limit his ability to learn, speak, see, perform manual tasks, eat or drink.

The only evidence Phillips offers to demonstrate that his impairments substantially limit these major life activities is (1) his sworn declaration and (2) certified copies of his records from the Alabama Department of Rehabilitation Services ("ADRS"). Phillips has failed to provide any specific citations to this evidence, nor does he make any attempt to show how this evidence supports a finding of disability under the ADA. Instead, he simply argues that his "records and his own testimony show that [he] is a qualified individual for purposes of the ADA." [7] In ruling on a

---

Phillips Decl. ¶ 15, attached to Resp. in Opp'n.

7. Resp. in Opp'n at 8.

motion for summary judgment, a district court is not obligated to speculate as to which part of the record the non-moving party relies, nor is it required to wade through the record and search for facts that might support the non-moving party's claim. *See Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir.1996). Nonetheless, the court has undertaken an independent review of this evidence to ascertain whether it shows that Phillips is disabled within the meaning of the ADA. For the reasons given below, the court concludes that this evidence does not establish that Phillips is substantially limited in the major life activities of learning, speaking, seeing, performing manual tasks, eating or drinking.

a. Learning

■ Phillips offers no evidence to support his contention that he is substantially limited in his ability to learn other than the assertion in his declaration that it took him a very long time to learn the layout of the store or that he would forget what he was doing while performing a particular task.[8] This allegation lacks any specific facts necessary to support a conclusion that Phillips' ability to learn is substantially limited. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 508 (7th Cir. 1998) (plaintiff's "oblique references" to the difficulty she experienced in becoming oriented to her job and her need to ask more questions than the average person did not establish substantial limitations on her ability to learn). In addition, the Eleventh Circuit has repeatedly recognized that "[c]onclusory allegations without specific supporting facts have no probative value." *Hilburn*, 181 F.3d at 1228 (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)). Thus, Phillips' conclusory statement is insufficient to establish a finding that his impairments substantially limit his ability to learn.

Furthermore, his ADRS records actually belie his claim. In late 1996, ADRS referred Phillips to Dr. Sharon K. Schneider, a clinical neuropsychologist, for an evaluation of Phillips' potential to obtain a promotion at Wal–Mart or a higher-paying job with another employer. Although Dr. Schneider noted that Phillips' performance on a neuropsychological testing battery "indicated mild weakness in immediate verbal memory and immediate visual memory," she explained that an "adequate new learning curve was established with minimal difficulty[,] suggesting that [Phillips] *can learn new job skills.*"[9] Therefore, while Phillips may have experienced some adverse affects in his intellectual functioning, his own evidence demonstrates that these impairments do not substantially limit his ability to learn.

b. Speaking

■ Phillips contends that he is substantially limited in his ability to speak because his speech is slow and it takes him a long time to convey what he is trying to say.[10] Notably absent from this conclusory allegation are any specific facts demonstrating that Phillips is substantially limited in his ability to speak. Indeed, Phillips offers no evidence whatsoever to suggest that his ability to talk is substantially limited. Thus, Phillips is essentially asking the court to hold that he has a speech disability simply because he says he does. The court declines to do so. The mere fact that Phillips' speech may be different than other persons within the general population does not mean that he has a substantial limitation under the ADA. *See Albertsons*, 527 U.S. at ——, 119 S.Ct. at 2168 (declining to equate a "difference" with a "substantial limitation").

Moreover, nothing in the record indicates that Phillips' speech impairment substantially affects his general ability to com-

8. *See* Phillips Decl. ¶ 15.

9. Evaluation of Chris Phillips by Sharon K. Schneider, Psy.D. 3 (Oct. 10, 1996) (emphasis added) [hereinafter Schneider Evaluation], attached to Resp. in Opp.

10. *See* Phillips Decl. ¶ 15.

municate with others. *See Davidson*, 133 F.3d at 507 (considering plaintiff's ability to communicate generally in determining whether speech impairment substantially limited her speech). Although Phillips may talk slower than other individuals in the general population, the record does not suggest that he is unable to communicate or otherwise express himself. For example, Dr. Schneider's evaluation quotes Phillips repeatedly, thereby demonstrating that he is generally able to communicate with others. *See, e.g.*, Schneider Evaluation at 1 (Phillips stated that his automobile accident "more or less killed me [but that] God saw fit to leave me here long enough to meet yourself, Cliff, and Barbara Tan and whoever."); *id* at 2 (Phillips was disappointed with his high school diploma because "the diploma didn't say what I expected it to say. It said I satisfied all of my requirements, I expected stars and stuff and something better, I never knew what it was supposed to say."). Dr. Schneider also observed that Phillips "likes to engage in small talk." *Id.* at 4. Thus, although Phillips may suffer from a speech impairment, he has failed to demonstrate how this impairment substantially limits his ability to speak.

#### c. Seeing

■ Phillips has similarly failed to establish that his impairments substantially limit his ability to see. Phillips alleges that when he began working for Wal–Mart, he "experienced blurred vision and on occasions would even lose [his] vision altogether because of [his] brain injury." [11] Aside from this sole conclusory statement and a vague reference to "vision difficulties" in his ADRS records,[12] Phillips has not presented any evidence to demonstrate that his sight is substantially limited. Moreover, even if Phillips were able to establish that his vision is occasionally

blurred, such a limitation is not "substantial" within the meaning of the ADA. As other courts have recognized, a "visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity." *Person v. Wal–Mart Stores, Inc.*, 65 F.Supp.2d 361, 363–64 (E.D.N.C.1999) (quoting *Cline v. Fort Howard Corp.*, 963 F.Supp. 1075, 1080 (E.D.Okla.1997)).

Here, the evidence shows that Phillips can perform various activities requiring the use of sight, including driving,[13] working[14] and reading.[15] Phillips' ability to perform these functions necessitates a finding that he does not suffer from a substantial limitation. *See Overturf v. Penn Ventilator Co.*, 929 F.Supp. 895, 898 (E.D.Pa. 1996) (plaintiff's sight was not substantially limited by double vision and lack of peripheral vision where he was able to drive a car, work, watch television and read). *See also Albertsons*, 527 U.S. at ——, 119 S.Ct. at 2168 (mere fact that plaintiff's ability to see "differs" from average person in general population does not constitute a disability under the ADA). Accordingly, even if Phillips occasionally experiences blurred vision, he has not demonstrated that the nature of this impairment substantially limits his ability to see.

#### d. Performing manual tasks

■ Phillips argues that he has "significant difficulty with spasms in [his] arms and hands which keep [him] from performing manual tasks like most people can." [16] Once again, however, this conclusory state-

---

11. Phillips Decl. ¶ 15.

12. *See* Certificate of Eligibility for Supported Employment 1 (August 7, 1999), attached to Resp. in Opp.

13. *See* Resp. in Opp. at 3.

14. *See* Compl. ¶ 11.

15. *See* Schneider Evaluation at 3.

16. Phillips Decl. ¶ 15.

ment is insufficient to establish a substantial limitation. Phillips does not identify, either specifically or by class, which manual tasks he allegedly cannot perform. He also fails to set forth any specific facts from which the court could conclude that he suffers from such a disability. Instead, he apparently relies upon his ADRS records to sustain such a finding. This reliance is misplaced. The only mention of such a limitation is Dr. Schneider's observation that Phillips experiences "spasticity in both upper extremities, difficulty writing, and a mild dysarthria."[17] However, Dr. Schneider's evaluation does not set forth any facts or specific examples from which the court could conclude that Phillips' muscle spasms substantially limit his ability to perform manual tasks. Thus, "the absence of any specific facts which would substantiate Dr. [Schneider's] conclusion deprives this medical diagnosis of any probative value." *Hilburn*, 181 F.3d at 1228. Phillips has therefore failed to establish that his physical or mental impairments substantially limit his ability to perform manual tasks.

### e. Eating and drinking

■ Finally, Phillips contends that he has "difficulty in eating and drinking because of [his] lack of coordination."[18] However, simply because Phillips' may find it "difficult" to eat or drink does not mean that he has a disability under the ADA. *Cf. Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir.1999) ("difficulty" walking long distances without becoming fatigued was only a "moderate" limitation). Instead, Phillips must show how his reduced coordination "substantially limits" his ability to eat and drink. *See Albertsons*, 527 U.S. at ——, 119 S.Ct. at 2168. Phillips has not met this burden. He does not state how this impairment substantially limits his ability to eat or drink, nor does he offer any specific facts to support a finding of substantial limitation. The court therefore holds that Phillips has failed to set forth any evidence demonstrating that his lack of coordination substantially limits his major life activities of eating or drinking.

### f. Working

Having concluded that Phillips is not substantially limited with respect to the major life activities of learning, talking, seeing, performing manual tasks, eating or drinking, the court next considers whether Phillips' physical and mental impairments substantially limit his ability to work. *See* 29 C.F.R. pt. 1630, App. § 1630.2(j) (1998) ("If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered.").

In order for a physical or mental impairment to substantially limit the major life activity of working, the impairment must significantly restrict a person's "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). For example, a person who develops a back condition that prevents him from performing any heavy labor would be substantially limited in his ability to work because he is precluded from performing a class of jobs. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (1998). On the other hand, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Thus, a major league pitcher who develops a strained elbow and can no longer throw a baseball would not be considered substantially limited in his ability to work because he is only precluded from performing a specialized job or a narrow range of jobs. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (1998). "To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a special-

---

**17.** Schneider Evaluation at 3.

**18.** Phillips Decl. ¶ 15.

ized job, or a particular job of choice." *Sutton*, 527 U.S. at ——, 119 S.Ct. at 2151.

The EEOC regulations set forth three factors that courts may consider when evaluating whether an individual is substantially limited in the major life activity of working: (1) the individual's geographical area; (2) the job from which the person was disqualified because of an impairment, and the type and number of jobs within the same geographical area utilizing similar training, knowledge, skills or abilities from which the person is also disqualified because of the impairment; and (3) the job from which the person was disqualified because of an impairment, and the type and number of jobs within the same geographical area that do not utilize similar training, knowledge, skills or abilities from which the person is also disqualified because of the impairment. *See* 29 C.F.R. § 1630.2(j)(3)(ii); *see also Gordon*, 100 F.3d at 911–12. In addition, the determination of whether a plaintiff was substantially limited in his ability to work must be made as of the time the alleged discriminatory conduct occurred. *See Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1133–34 (11th Cir.), amended on reh'g, 102 F.3d 1118 (11th Cir.1996).

 Upon considering these factors and the evidence in the record, the court concludes that Phillips has not demonstrated that his physical and mental impairments substantially affected his ability to work at Wal–Mart. Phillips has not alleged, nor is there any evidence to suggest, that he was unable to perform his job duties. More importantly, Phillips has not presented any evidence indicating that he cannot perform a broad range or class of jobs. *See Swain*, 146 F.3d at 858 ("Although a plaintiff seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment."). Indeed, Phillips

repeatedly admitted in his deposition that his impairments did not limit his ability to work during his employment with Wal–Mart. For example, Phillips testified that he was unaware of any jobs that he could not perform.[19] Similarly, he testified that there were no limitations on his ability to perform his job duties.[20] The court therefore concludes that Phillips was not substantially limited in his ability to work at the time the alleged discrimination occurred. Accordingly, because Phillips has not shown that his physical or mental impairments substantially limit any of his major life activities, the court holds that he is not actually disabled within the meaning of the ADA.

### B. Whether Phillips has a Record of a Disability

Although Phillips does not have an actual disability, he will still be considered disabled under the ADA if he can show that he has a "record of" disability. *See* 42 U.S.C. § 12102(2)(B). An individual with a record of disability is a person who "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) (1998). One purpose of this provision is to prevent discrimination against individuals because of a history of disability. *See* 29 C.F.R. pt. 1630, App. § 1630.2(k) (1998). For example, this provision would protect a former cancer patient from discrimination based on that prior medical history. *See id.* The other purpose is to ensure that individuals are not discriminated against because they have been misclassified as being disabled, such as a person who is erroneously classified as having a learning disability. *See id.*

 To establish a claim under the ADA based upon a record of disability, a plaintiff must show that at some point in the past, the employer relied upon a rec-

---

**19.** *See* Phillips Dep. 53:19–22, attached as Exh. D to Brief in Supp. of Summ.J.Mot.

**20.** *Id.* at 54:2–4.

ord which either classified or misclassified that individual as having a physical or mental impairment that substantially limits a major life activity. *See Hilburn*, 181 F.3d at 1229. There are several types of records upon which an employer could rely, including education, medical or employment records. *See* 29 C.F.R. pt. 1630, App. § 1630.2(k) (1998).

At the outset, the court rejects Wal–Mart's assertion that because Phillips does not have a substantially limiting impairment under 42 U.S.C. § 12102(2)(A), he cannot establish a record of such an impairment under section 12102(2)(B). An individual need not have an actual disability under the ADA to have a record of disability. As the EEOC regulations recognize, as long as an employer relies upon a record that classifies a person as having a mental or physical impairment that substantially limits a major life activity, that person is considered disabled under the ADA—even if the classification was erroneous. *See* 29 C.F.R. § 1630.2(k) (1998). Thus, Phillips need only show that Wal–Mart relied upon a record that misclassified him as having a substantially limiting impairment to satisfy the definition of a disability set forth in section 12102(2)(B).

 Phillips, however, has failed to make such a showing. The only evidence he offers concerning a record of disability is his allegation that "[w]hen I was hired by Wal–Mart, I filled out some paperwork about my physical and mental limitations. Part of the form contained an agreement on my part that Wal–Mart could apply to the State of Alabama for reimbursement for part of my wages because I was handicapped."[21] This statement does not establish a record of disability. While this may show that Wal–Mart was aware of Phillips' physical and mental impairments, it does not demonstrate that Wal–Mart misclassified these impairments as substantially limiting any of his major life activities. *See* 29 C.F.R. pt. 1630, App. § 1630.2(k) (1998) (plaintiff's burden of proving a record of disability "is satisfied if a record

relied on by an employer indicates that the individual has or has had a *substantially limiting* impairment") (emphasis added). Thus, having failed to produce any evidence that Wal–Mart relied upon records that erroneously classified him as having a substantially limiting impairment, Phillips has failed to demonstrate that he has a record of disability within the meaning of the ADA.

### C. Whether Phillips is Regarded as Having a Disability

The final way Phillips can establish a disability under the ADA is to show that Wal–Mart regarded him as disabled, despite the lack of an actual disability. *See* 42 U.S.C. § 12102(2)(C). A person is "regarded as" disabled if he: (1) has a physical or mental impairment that does not substantially limit a major life activity, but is treated by his employer as if he does; (2) has a physical or mental impairment that substantially limits a major life activity only because of the attitudes of others concerning the impairment; or (3) has no impairment at all, but is treated by his employer as if he has a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(1) (1998). In other words, "an employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton*, 527 U.S. at ——, 119 S.Ct. at 2150. The Eleventh Circuit has emphasized that, as with an actual disability, the impairment must be perceived as "substantially limiting" one or more of the individual's major life activities. *See Standard*, 161 F.3d at 1327.

The purpose of the "regarded as" provision is to "combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities." *Gordon*, 100 F.3d at 913; *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 541 (7th

---

21. Phillips Decl. ¶ 14.

Cir.1995) ("Many ... impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence."). *Cf. School Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987) ("By amending the definition of 'handicapped individual' [within the Rehabilitation Act of 1973] to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment."). These misperceptions are often the result of "stereotypic assumptions not truly indicative of ... individual ability." 42 U.S.C. § 12101(7).

To establish a disability under section 12102(2)(C), it is not sufficient to establish that an employer regarded the plaintiff as somehow disabled. Rather, "the plaintiff must show that the employer regarded the individual as disabled within the meaning of the ADA." *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 646 (2d Cir. 1998). Accordingly, Phillips must show that Wal–Mart perceived the physical and mental impairments caused by his traumatic brain injury as substantially limiting one or more of his major life activities.

Phillips has not made such a showing. At most, Phillips has demonstrated that he was regarded by Wal–Mart as having physical and mental impairments; he has not shown that Wal–Mart regarded these impairments as substantially limiting any of his major life activities. For example, Phillips alleged that both Susan Black and Randy Ferguson treated him harshly, but he has not demonstrated that either of these supervisors did so because they perceived him as disabled. To the contrary, Phillips' supervisors recognized that he could perform his job duties and, as was shown through evaluations, written coachings and other evi-

dence in the record, they insisted that he do so. The court therefore concludes that Phillips was not regarded as disabled within the meaning of the ADA.

Under these circumstances, summary judgment is appropriate because no reasonable jury could render a verdict in Phillips' favor. Phillips has not presented sufficient evidence to show that he has an actual disability, has a record of disability or was regarded as having a disability. Thus, having failed to establish that he has a disability, Phillips cannot state a claim under the ADA. Accordingly, the court will not address the remaining elements of his prima facie case.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Phillips has failed to set forth a prima facie case of disability discrimination because he has not demonstrated that he has a disability within the meaning of the ADA. The court therefore **GRANTS** Wal–Mart's motion for summary judgment.

### *JUDGMENT*

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, **FINAL JUDGMENT** is hereby entered in favor of defendant Wal–Mart Stores, Inc. and against plaintiff Christopher C. Phillips. In accordance with the court's November, 29, 1999 order granting Wal–Mart's motion for summary judgment, Phillips shall recover **NOTHING** from Wal–Mart. Each party shall bear its own costs.