Teressa A. PAPPROTH, Plaintiff,

v.

E.I. DUPONT DE NEMOURS AND COMPANY d/b/a Dupont Performance Coatings, Defendant.

No. CIV.A. 504CV00020.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 15, 2005.

Derrick W. Whetzel, Miller & Earle, PLLC, Elkton, VA, Juris T. Krumins, Beattie & Associates, PLLC, Fairfax, VA, for Plaintiff.

Jonathan Paul Harmon, Mildred Bennett Wells, McGuirewoods LLP, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

CONRAD, District Judge.

Teressa A. Papproth brings this action against her former employer, E.I. DuPont De Nemours and Company d/b/a DuPont Performance Coatings (DuPont), pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. Ms. Papproth claims that DuPont violated her rights under the ADA by failing to accommodate her disability, and by constructively discharging her. Ms. Papproth also claims that she was subjected to a hostile work environment. The case is currently before the court on the defendant's motion for summary judgment. For the reasons that follow, the court will grant the defendant's motion.

### I.

Ms. Papproth began working as a production planner at DuPont's plant in Front Royal, Virginia on October 13, 1997. Her duties included purchasing materials and scheduling the production of automotive paint orders. At all times relevant to her complaint, Ms. Papproth lived in Frederick, Maryland and commuted sixty-two miles to work.

DuPont's employees work in teams. Each team is responsible for managing itself, as well as evaluating and disciplining team members. Ms. Papproth worked on the planning team with several other employees.

At the end of 2001, Ms. Papproth began suffering from fatigue and sensitivity to touch. Plaintiff's primary care physician referred her to a rheumatologist, Dr. Nathan Wei. Dr. Wei subsequently diagnosed Ms. Papproth with rheumatoid arthritis, osteoarthritis, and fibromyalgia. As a result of these conditions, Ms. Papproth had to take breaks to rest and stretch at work. She also had to stop for breaks during her

commute, which often caused her to be late for work.

In the fall of 2002, Ms. Papproth and her fellow planning team members began having discussions about her declining work performance. On September 26, 2002, the plaintiff received an unsatisfactory review. The team prepared a developmental plan, which was designed to establish goals for the plaintiff's improvement. Additionally, plaintiff's team members helped clean up and reorganize some of the plaintiff's projects.

On November 18, 2002, Dr. Wei wrote a letter to DuPont's occupational nurse, in which he opined that Ms. Papproth's job tasks were being compromised by her rheumatoid arthritis and fibromyalgia, and that her "ability to concentrate may be a problem." The doctor further stated as follows:

Specifically, Ms. Papproth needs breaks to walk and stretch every 40 to 60 minutes. At least once per day, Ms. Papproth needs to rest for up to 30 minutes. Ms. Papproth needs to adjust and readjust sitting and body position due to discomfort. Ms. Papproth's productivity and stamina are affected by fatigue.

Ms. Papproth suffers discomfort on the commute to work. This discomfort may necessitate her stopping and stretching; therefore, prolonging her commute.

Due to the importance of having a regular sleep pattern, Ms. Papproth will be unable to work extended hours.

As a result of the above, Ms. Papproth's level of productivity is approximately 60% of her former production level.

In response to the letter, the occupational nurse issued a limited duty form for the plaintiff, which included some of the limitations noted by Dr. Wei. After being examined by Dr. Chapin, a plant physician, the plaintiff continued working with these limitations through December. On January 7, 2003, the plaintiff was examined by another plant physician, Dr. Karolyi. Dr. Karolyi determined that the plaintiff could return to work with no limitations, based on his opinion that continued activity was "better for her illness than any restricted duty."

On January 14, 2003, the plaintiff received an unsatisfactory evaluation from her team. The team noted that certain responsibilities were not being properly completed, and that the team was not sure what the plaintiff was working on day to day. On January 17, 2003, the plaintiff was placed on probation. That same day, the plaintiff submitted her resignation. The plaintiff contends that she was given three options: "[d]o the work, resign, or make another mistake and get fired."

The plaintiff has been working as a treatment coordinator for an orthodontist in Frederick, Maryland, since approximately six weeks after she resigned from DuPont. In this administrative position, Ms. Papproth does consultations and marketing work, and she handles the front desk. Ms. Papproth testified at her deposition that she has had no problems with absenteeism, tardiness, or other performance issues. Ms. Papproth also cleans her sister's house once a week.

Ms. Papproth submitted a charge of discrimination to the Equal Employment Opportunity Commission (EEOC) on July 11, 2003, alleging that DuPont discriminated against her in violation of the ADA. The EEOC dismissed the plaintiff's charge on December 15, 2003. Ms. Papproth filed the present action on March 10, 2004. She asserts three claims under the ADA against DuPont: (1) constructive discharge; (2) failure to accommodate; and (3) hostile environment.

## II.

The case is currently before the court on the defendant's motion for summary judg-

ment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.

Ms. Papproth's claims under the ADA for constructive discharge, failure to accommodate, and hostile environment all require her to prove that she was "disabled" within the meaning of the ADA. *See Gallimore v. Newman Machine Co., Inc.*, 301 F.Supp.2d 431, 451 (M.D.N.C.2004); *Rhoads v. Federal Deposit Ins. Corp.*, 257 F.3d 373, 387 (4th Cir.2001); *Fox v. General Motors Corp.*, 247 F.3d 169, 177 (4th Cir.2001).[1] The ADA defines a "disability", in part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Examples of "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(j).

The plaintiff first contends that her stamina has been "affected" by her fibromyaglia and rheumatoid arthritis, and that these conditions "compromise" her ability to concentrate.[2] While the United States

**1.** To establish a claim for constructive discharge under the ADA, the plaintiff must prove that she was constructively discharged because of her membership in a protected class. *Gallimore*, 301 F.Supp.2d at 451 (holding that the plaintiff's constructive discharge claim failed because he failed to show that he was disabled within the meaning of the ADA). *See also Hansberry v. Computer Eng'g Sys.*, 1998 WL 539945, 1998 U.S. Dist. LEXIS 13508, at *12 (E.D.Va.1998) ("Before Plaintiff can maintain a claim of constructive discharge under the ADA, he must show that he was a 'qualified person with a disability' at the time of his resignation.").

The plaintiff must prove the following elements to establish a claim for failure to accommodate: (1) that she was an individual who had a disability within the meaning of the ADA; (2) that the employer had notice of her disability; (3) that with reasonable accommodations she could perform the essential functions of the position; and (4) that the

employer refused to make such accommodations. *Rhoads*, 257 F.3d at 387.

The plaintiff must prove the following elements to establish a hostile environment claim: (1) that she is a qualified individual with a disability; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her disability; (4) that the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) that some factual basis exists to impute liability for the harassment to the employer. *Fox*, 247 F.3d at 177.

**2.** The plaintiff's contentions are supported by an affidavit from her treating physician, Dr. Nathan Wei. In his affidavit, Dr. Wei stated that the plaintiff "suffers side effects from medications she takes for [rheumatoid arthritis and fibromyalgia], compromising her ability to concentrate." Dr. Wei also stated that the plaintiff's work productivity and stamina

Court of Appeals for the Fourth Circuit has not addressed whether concentrating and maintaining stamina are major life activities under the ADA, several courts have held that they are not major life activities. *See Boerst v. General Mills Operations, Inc.*, 25 Fed.Appx. 403, 406, 2002 WL 59637 (6th Cir.2002) ("[N]either concentrating nor maintaining stamina qualify as major life activities under the ADA"); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999) ("Concentration may be a significant and necessary component of a major life activity, such as working, learning or speaking, but it is not an 'activity' itself."); *Phillips v. Wal–Mart Stores, Inc.*, 78 F.Supp.2d 1274, 1282 (D.Ala.1999) ("Concentration is not a major life activity.")

■ However, even assuming that concentrating and maintaining stamina are major life activities, the plaintiff has failed to establish that her medical conditions *substantially limit* these activities. The ADA only protects people whose impairments are so severe that they "significantly restrict[ ]" a person's ability to perform major life activities when compared to the abilities of the "average person in the general population." 29 C.F.R. § 1630.2(j)(ii). A condition that simply affects or compromises an individual's ability to perform major life activities is insufficient to establish a disability. As the United States Supreme Court held in *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (emphasis added), "an individual must have an impairment that *prevents* or *severely restricts* the individual from doing activities that are of central importance to most people's daily lives." *See also Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 317–317 (6th Cir.2001) (holding that the plaintiff's ability to concentrate was not

substantially limited by his depression, where the record showed that his depression merely impacted his ability to concentrate); *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997) ("It is not enough that an impairment affects a major life activity; the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limited.").

The plaintiff also argues that her medical conditions have substantially limited her ability to work. The plaintiff emphasizes that "[m]ost people can sit for hours at work and can make a 62 mile drive without stopping along the way to stretch...." Additionally, Dr. Wei stated in his affidavit that the plaintiff must walk or stretch every forty to sixty minutes, and that she is required to rest up to thirty minutes per day. Dr. Wei also stated that the plaintiff is unable to work extended hours, because she must maintain a normal sleep pattern.

■ In order to establish that she is substantially limited in her ability to work, the plaintiff must show that her medical conditions significantly restrict her ability to perform a wide range of jobs. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir.1997). "[T]he inability to perform a particular job does not constitute a substantial limitation." *Id.* As the defendant points out, the plaintiff's inability to sit for long periods of time at her computer, and her inability to work extended hours do not prevent her from performing a wide range of jobs that have no such requirements. *See Overton v. Tar Heel Farm Credit, ACA*, 942 F.Supp. 1066, 1068 (E.D.N.C.1996) (holding that the plaintiff's inability to work overtime did not substantially limit his ability to work). Likewise, the plaintiff's inability to drive sixty-two

have been "affected" by these medical conditions.

miles without stopping and stretching does not significantly restrict her ability to perform a wide range of jobs that are closer to her home. In fact, the plaintiff has been working as a treatment coordinator for an orthodontist in Frederick, Maryland, without any problems, since shortly after she left DuPont. The Fourth Circuit has emphasized that obtaining a new job is evidence that an individual's impairments are not substantially limiting. *Pollard v. High's of Baltimore, Inc.,* 281 F.3d 462, 471 (4th Cir.2002).

For the reasons stated, the court concludes that the plaintiff has failed to establish that her fibromyalgia and rheumatoid arthritis substantially limit any major life activities. Accordingly, the plaintiff is not disabled within the meaning of the ADA, and the defendant is entitled to summary judgment on all three of her ADA claims.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

### *ORDER*

This case is before the court on the defendant's motion for summary judgment. For the reasons stated in a Memorandum Opinion filed this day, it is hereby

### ORDERED

that the defendant's motion for summary judgment is **GRANTED**.

The Clerk is directed to strike the case from the active docket of the court, and to send a certified copy of this Order and the attached Memorandum Opinion to the plaintiff and to all counsel of record.