United States Court of Appeals,

Eleventh Circuit.

No. 97-3019.

Rose SWAIN, Plaintiff-Appellant,

v.

HILLSBOROUGH COUNTY SCHOOL BOARD, Defendant-Appellee.

July 15, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-2142-Civ-T-23B), Thomas G. Wilson, Magistrate Judge.

Before COX and BLACK, Circuit Judges, and RONEY, Senior Circuit Judge.

BLACK, Circuit Judge:

Plaintiff Rose Swain appeals the district court's order granting summary judgment for Defendant Hillsborough County School Board (HCSB) in her suit alleging that HCSB discriminated against her due to her incontinence in violation of the Americans With Disabilities Act of 1990(ADA), 42 U.S.C. §§ 12101-12213. We hold that Swain does not have a disability as defined by the ADA and affirm the decision of the district court.

## I. BACKGROUND

Between 1963 and 1981, Swain worked as a teacher and an administrator in the Hillsborough County school system. Swain took an extended leave of absence beginning in 1981, but returned to the school system in 1986. Upon her return, Swain worked as a teacher in the GED day program for at-risk students at Jefferson High School (Jefferson). In 1992, the principal at Jefferson terminated the program, so Swain transferred to the GED day program at Plant City High School (Plant City). Swain taught at Plant City for two years without needing any special accommodation

for her incontinence.[1]

In order for students to change classes, they are given a period of time (passing time) to go from one classroom to another. Although the GED students were in self-contained classes and did not need the passing time, they were permitted to leave their classrooms during that time. In early 1994, William L. Maxwell, Jr., became the principal at Plant City. At the beginning of the 1994-95 school year, Maxwell instituted a policy prohibiting GED students from leaving their assigned classroom when other students changed classes (no-passing policy). Maxwell adopted the new policy to eliminate alleged problems with student tardiness.

Upset by this policy, Swain complained to Maxwell and Dr. Joan Dye, the assistant principal for adult education at Plant City. She believed the policy was demeaning to herself and her students. She also complained that she did not have adequate opportunity to use the restroom herself. After several informal discussions, Swain met with Maxwell on September 15, 1994, to discuss the policy. According to Swain, Maxwell refused to hear her complaints and threatened to close the GED day program if Swain continued to protest the policy. In these initial discussions, Swain did not inform Maxwell or Dye of her physical problems.

Swain's condition posed no problem when the GED students were permitted to leave the room during passing time, but the implementation of the no-passing policy limited Swain's access to the restroom. Although Swain had sufficient access in the morning due to a conference period and a lunch break, Swain did not have a break between 1:00 P.M. and 3:55 P.M. Due to the length

---

[1]Swain suffers from a combination of ailments which requires her to have frequent access to a restroom throughout the day. In 1954, Swain became incontinent after encountering difficulties while giving birth. She can experience leakage when she coughs, laughs, or sneezes, and as a result, she has worn padded undergarments for twenty years. In addition to her incontinence, Swain suffers from high blood pressure and takes a diuretic, which increases her need to urinate. Swain also has an abnormal creatinine level that requires her to drink fluids regularly.

of this period, the lack of restroom access became problematic for Swain.

On October 3, 1994, Swain met with Dye and informed Dye of her incontinence. Dye suggested that Swain decrease her intake of fluids in the morning or simply leave her class unattended when she needed to use the bathroom. In a memorandum to Dye and Maxwell, Swain rejected these suggestions as unreasonable. Dye then suggested that Swain arrange a trade-off in which Swain would briefly sit in on another teacher's class in the morning during Swain's conference period, and the other teacher would briefly sit in on Swain's class in the afternoon during that teacher's conference period so that Swain could use the restroom.

Swain did not think that exchanging teachers was an educationally sound practice, but she did find two colleagues who were willing to relieve her for brief periods during their afternoon conference periods so that Swain could visit the restroom. On October 21, 1994, Swain informed Maxwell that she had found a teacher to relieve her during the afternoon period and gave Maxwell the teacher's name. On November 2, 1994, Maxwell again raised the issue with Swain, who reiterated that the problem was resolved. After this second occasion, Swain made no mention to Maxwell or Dye of her problem and made no additional request for an accommodation.

Swain retired on March 31, 1995. In her deposition, Swain stated that she retired because her relationship with the administration had deteriorated, in large part because she felt the administration had denigrated the GED program and demeaned her and her students. Swain did not indicate that her physical impairments or a lack of an accommodation contributed to the decision, but she later stated in an affidavit in opposition to summary judgment that they were the primary reason motivating her departure.

Swain brought this suit alleging that HCSB failed to provide her with a reasonable accommodation as required by the ADA and that she was constructively discharged by HCSB as a

result of this failure. HCSB then filed a motion for summary judgment. The court granted the motion because it concluded that Swain did not have a disability under the ADA, and that even if she did, HCSB reasonably accommodated Swain's disability and did not constructively discharge her. Swain appealed.

## II. ANALYSIS

We review a district court's grant of summary judgment de novo applying the same standards as the district court. *Harris v. H & W Contracting Co.,* 102 F.3d 516, 518 (11th Cir.1996). The court must view all the evidence and all factual inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To establish a prima facie case under the ADA, Swain must show: (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of the disability.[2] 42 U.S.C. § 12132; *see also, e.g., Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996). The ADA defines disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

---

[2]The ADA defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

42 U.S.C. § 12102(2). Swain makes no argument that she satisfies the second or third prong of the definition. She relies solely on the assertion that her physical ailments substantially limit a major life activity. Here, Swain claims her impairments affect the major life activity of working. Thus, to establish a prima facie case and survive summary judgment, Swain must present sufficient evidence to create a genuine issue of material fact as to whether her physical impairments substantially limit her ability to work.

The governing regulations provide guidance to courts determining whether a person's impairments substantially limit the major life activity of working:

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). The regulations also outline several factors to be considered in determining whether an individual's ability to work is substantially limited by her physical or mental impairments:

> (A) The geographical area to which the individual has reasonable access;
>
> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).[3]

---

[3]In addition, the Court should consider more general factors such as:

(i) the nature and severity of the impairment;

Based on the criteria enunciated in these regulations, Swain fails to create a genuine issue of material fact as to whether she is disabled under the ADA. Swain has presented no evidence to show that she cannot perform a broad range or class of jobs;  instead, she simply makes the vague assertion that she is unable to perform any job that precludes her from having regular access to a restroom.  In essence, Swain argues that she has a disability under the ADA because she has a physical impairment which precludes her from working in any job that a person with her impairment cannot perform.  Were the Court to accept this tautological reasoning, no physical or mental impairment would fall outside the scope of the ADA. Although a plaintiff seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment.  *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727-28 (5th Cir.1995);  *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 924-44 (10th Cir.1994).  Swain has offered no evidence that addresses the factors listed in the regulations or that otherwise suggests her impairments substantially limit her ability to work. She has thus failed to create a genuine issue of material fact as to whether she has a disability under the ADA.

Not only does the record contain no evidence to support Swain's argument, but Swain's own testimony and employment record belie any claim that she cannot perform a broad range or class of jobs that individuals of similar skill, ability, and training can perform.  Prior to the events leading

---

> (ii) the duration or expected duration of the impairment;  and
>
> (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

to her retirement, Swain worked as a teacher and administrator for nearly 30 years, including 8 years as a teacher in the GED day program at Jefferson and Plant City. During that period, Swain's ability to work was unaffected by her impairments. No evidence suggests that Swain's ailments worsened at any time relevant to this action. Moreover, Swain acknowledged in her deposition that she could return to teaching. In sum, Swain's proffered evidence does not create an issue of material fact concerning her inability to perform a broad class of jobs due to her physical ailments.

We conclude that Swain does not have a disability under the ADA. We therefore need not consider whether Swain made a sufficient demand for an accommodation after telling Maxwell the problem had been resolved or whether HCSB reasonably accommodated Swain. Employers have no duty to accommodate an employee if the employee is not disabled under the ADA. 42 U.S.C. § 12112(a); *see also Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907, 915 (11th Cir.1996). Similarly, we need not address whether Swain was constructively discharged.

### III. CONCLUSION

Based on the record in this case, we conclude that Swain is not an individual with a disability as defined by the ADA. We therefore do not reach the reasonable accommodation and constructive discharge issues. The district court's judgment is affirmed.

AFFIRMED.