**James M. HOPPES, Jr., Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA, FISH AND BOAT COMMISSION, Defendant.**

No. Civ.A. 1:CV–97–1959.

United States District Court, M.D. Pennsylvania.

Dec. 15, 1998.

Richard W. Kolosky, Worth Law Offices, P.C., Allentown, PA, for James M. Hoppes, Jr., plaintiff.

Linda Cadden Barrett, Office of Attorney General, Harrisburg, PA, for Commonwealth of Pennsylvania, Fish and Boat Commission, defendant.

*MEMORANDUM*

CALDWELL, District Judge.

I. *Introduction.*

The plaintiff, James M. Hoppes, Jr., filed this action under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, and the Rehabilitation Act, 29 U.S.C. § 794, after the defendant, the Commonwealth of Pennsylvania, Fish and Boat Commission (the Commission), refused to hire him for the job of waterways conservation officer (WCO) because of his color blindness.

We are considering the defendant's motion for summary judgment, which argues that the claim must fail because neither Act protects an individual's right to a particular job and the defendant considers Hoppes to be unable to perform only the WCO job. The analysis under both Acts is the same. *See McDonald v. Commonwealth of Pennsylvania, Department of Public Welfare,* 62 F.3d 92, 94–95 (3d Cir.1995). We will examine the motion under the well-developed standard. *See Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 536 n. 3 (3d Cir.1994).

II. *Background.*

Based on the parties' evidentiary submissions, the following is the background to the pending motion.

A WCO is a kind of police officer for Pennsylvania's waterways; in fact, the job description identifies the position as "specialized law enforcement work." (Defendant's exhibit B). A WCO enforces the Commonwealth's boating laws and its environmental laws dealing with water. Consequently, the officer is expected to appear in court sometimes.

In about 1991, the Commission determined that having normal color perception was necessary to perform the WCO position. In the summer of 1994, the Commission updated its description of the tasks required of a WCO. The essential tasks are:

a. The ability to distinguish colors of traffic signals (including channel markers and running lights on boats, waterways markers, signs, license plates, validation stickers and fishing licenses.)

b. The ability to identify make, model type and color of vehicles/boats from 20 to 50 feet away.

c. The ability to examine potentially dangerous situations, including pollution and chemical spills in order to decide what action should be taken.

d. The ability to examine the colors of tests done on spills which include variants of red and green.

(Defendant's statement of material fact no. 29 and 36).

In October 1994, Hoppes applied for the WCO position. After a June 1995 interview, a background investigation and reference check, the Commission made Hoppes a conditional offer of employment, contingent on his passing a physical evaluation, a psychological evaluation and a swimming test.

In July 1995, the plaintiff was given the physical examination. As part of the exam, Hoppes was administered the Ishihara test for color blindness. The plaintiff failed the test and was diagnosed with a red-green color deficiency. This was the first time that Hoppes was aware that he was color blind. The Commission notified Hoppes of the results and suggested that his physician confirm them. In July 1995, Hoppes' physician, Dr. James Cochran, confirmed the results. However, Dr. Cochran identified the color blindness as a mild red-green deficiency and opined that the plaintiff could do the WCO job.

Nonetheless, on July 26, 1995, the Commission withdrew its conditional offer of employment based on Hopes' inability "to pass the standards for normal color perception as measured by the 'Ishihara's test for Colour Blindness–1976,'" with the explanation that "this disability would impact on your ability to perform the full range of duties assigned to this position." (Defendant's exhibit F).

After Hoppes retained counsel, the Commission asked him to submit to another test at Commission expense to determine the degree of red-green color deficiency. On October 26, 1995, Dr. John O'Donnell conducted the exam and plaintiff once again failed the Ishihara color test. A few days later, Dr. O'Donnell tested Hoppes again, this time at the plaintiff's expense. At this third test, Hoppes wore a red contact lens in his left eye, and the lens enabled him to pass the Ishihara test. Dr. O'Donnell opined that if this was "necessary for the proper performance of his job, this could be accomplished by the use of a red contact lens in one eye" but this would "not improve his ability to discern colors," just "his ability to discriminate between colors." (Defendant's exhibit H).

Despite the plaintiff's passing the Ishihara test, the Commission still refused to hire him, believing that normal color perception was necessary given the public-safety aspects of the job and the need of a WCO to appear in court where the officer's credibility might be tested on descriptions of boats and of people's clothing. The Commission apparently ignored the fact that the plaintiff had been assisting WCOs for 26 years and had been performing the tasks of a WCO without difficulty during that time.

The plaintiff has been gainfully employed for 26 years, for the past eight years as a salesman for a steel company. His deficiency in distinguishing between red and green has not affected his ability to perform the tasks of daily living such as driving, working, caring for himself and his family, communicating and other tasks, including seeing without eyeglasses.

III. *Discussion.*

A. *The Applicable Law.*

We set forth the ADA provisions necessary to the resolution of this case. The ADA protects a qualified individual with a disability from discrimination in hiring as long as he can perform the essential functions of the job with reasonable accommodation. 42 U.S.C. §§ 12112(a), 12111(8), and 12112(b)(5)(A). In *Olson v. General Electric Astrospace*, 101 F.3d 947 (3d Cir.1996), the Third Circuit summarized other pertinent ADA provisions, and we borrow the language of that opinion in setting them forth. *See* 101 F.3d at 952. The Act defines the term "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

"Major Life Activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

breathing, learning, and working." 29 C.F.R. § 1630.2(i). These activities are "substantially limit[ed]" when one is

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

In determining if a person is affected by a disability that "substantially limits" a "major life activity" the factors to be considered include:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

In *Deane v. Pocono Medical Center,* 142 F.3d 138, 144 n. 7 (3d Cir.1998), the Third Circuit summarized the ADA regulations pertinent to the major life activity of working, and we borrow some of its language. In determining whether a person is substantially limited in the major life activity of working, the term "substantially limited" is defined as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Thus, the mere "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* In making these determinations, courts may consider:

(A) [t]he geographical area to which the individual has reasonable access;

(B) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) [t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

█ The plaintiff has the burden of establishing that he is disabled within the meaning of the ADA. *See Olson, supra,* 101 F.3d at 952 ("before the burden shifting can even begin, Olson must show that he is a member of a protected class"). To establish an ADA claim, the plaintiff must make the following prima facie showing:

(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.

*Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 (3d Cir.1998).

B. *The Merits of Defendant's Motion.*

In moving for summary judgment, the defendant makes two principal arguments. First, the plaintiff does not have a disability in the major life activity of seeing because his color blindness does not substantially limit his sight, as defined by section 1630.2(j)(1), since the plaintiff's sight is not significantly restricted in comparison to a person in the general population. The defendant points out that, despite his color blindness, Hoppes has been able to perform the major life activities of driving, working, caring for himself and his family, communicating and performing other tasks of daily living, including seeing without eyeglasses.

Second, the defendant contends that Hoppes is not disabled, or perceived to be disabled, in the major life activity of working because the record shows that the defendant

only considers Hoppes to be disabled from the particular job of waterways conservation officer, and the ADA only protects individuals who are disabled, or perceived to be disabled, "from a class of jobs or a broad range of jobs in various classes," Appendix to 29 C.F.R. § 1630.2(j) (1998) at p. 349, "not a particular specialized job or a narrow range of jobs." *Id.* The Commission cites the language of section 1630.2(j)(3)(i) that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." It also refers to a number of cases holding that an individual has no right under the ADA (or the Rehabilitation Act, the model for the ADA) to a particular job. *See, e.g., Gutridge v. Clure,* 153 F.3d 898 (8th Cir.1998); *Swain v. Hillsborough County School Board,* 146 F.3d 855 (11th Cir.1998); *Thompson v. Holy Family Hospital,* 121 F.3d 537 (9th Cir.1997); *McKay v. Toyota Motor Manufacturing, U.S.A., Inc.,* 110 F.3d 369 (6th Cir.1997); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723 (5th Cir.1995); *Daley v. Koch,* 892 F.2d 212 (2d Cir.1989).

In opposition, the plaintiff argues that the Commission has not provided any evidence that the plaintiff is not disabled in regard to the major life activities of seeing and working, citing the factors set forth in sections 1630.2(j)(1) for seeing and 1630.2(j)(3)(ii) for working. The plaintiff also argues that *Wilson v. Pennsylvania State Police,* 964 F.Supp. 898 (E.D.Pa.1997), supports his claim that he is disabled in the major life activity of seeing. Finally, he argues that his ADA claim must proceed because the evidence shows that he can do the WCO job even though he is color blind but that the Commission perceives him to be disabled from this position.

The plaintiff's first argument is wrong because the defendant does not have the burden of proving that the plaintiff is not disabled; the plaintiff has the burden of proving that he is disabled within the meaning of the ADA. *See Olson, supra,* 101 F.3d at 952.

The plaintiff's reliance on *Wilson* is also misplaced. In *Wilson,* the plaintiff filed a class-action lawsuit based on a claim that the Pennsylvania State Police discriminated in hiring against persons with severe myopia. The lead plaintiff could not perform the daily tasks of living such as driving, cooking, and reading without wearing glasses or contact lens. 964 F.Supp. At 900. The court allowed the action past the summary-judgment stage because the myopia qualified as a substantial limitation on the major life activity of seeing. It also distinguished some of the cases the Commission has cited here because they proceeded on the theory that the plaintiffs were limited in the life activity of working, not seeing.

■ We conclude that the instant case is different because unlike in *Wilson,* the plaintiff's disability, his color blindness, does not prevent him from performing the tasks of daily life. Indeed, he did not even know he was color blind until he was tested for it while applying for the WCO position. Additionally, to the extent that the plaintiff is relying on a limitation on his ability to work, the cases distinguished in *Wilson,* some of which we chain-cited above from the defendant's argument, would be applicable.

The plaintiff's final argument is also meritless. Even if the evidence shows that he can do the WCO job while being color blind, he cannot bring an ADA or Rehabilitation Act claim as long as he bases it on the fact that the Commission perceives him to be disabled from that particular position alone. Cases like *Gutridge, supra,* and *Swain, supra,* and the others cited above establish that.

We will issue an appropriate order.

## ORDER

AND NOW, this 15th day of December, 1998, it is ordered that:

1. The defendant's motion for summary judgment (doc. no. 16) is granted.

2. The Clerk of Court shall enter judgment in favor of the defendant and against plaintiff and close this file.