**Thomas BARON, Plaintiff,**

v.

**CITY OF HOLLYWOOD, Defendant.**

No. 0:99CV06075.

United States District Court,
S.D. Florida,
Northern Division.

April 4, 2000.

Ephraim Roy Hess, Fort Lauderdale, FL, Colleen Kathryn O'Loughlin, Pompano Beach, FL, for plaintiff.

Richard Thomas Kilgore, Carman Beauchamp Sang & Topkin, Hollywood, FL, for defendant.

*ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

RYSKAMP, District Judge.

THIS CAUSE came before the Court on defendant's motion for summary judgment and the plaintiff's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c). **[DE 75, 80]** The defendant and plaintiff have both responded and replied. Oral argument was heard in open court on March 21, 2000. These motions are ripe for adjudication.

## I. BACKGROUND

On January 1, 1999, plaintiff Thomas Baron ("Baron") filed a complaint seeking injunctive relief, declaratory judgment and damages against defendant City of Hollywood ("City"). Baron asserts that the City violated his constitutional right to be free of unlawful searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 when the City, under color of state law, withheld employment from him when he refused to submit to a suspicionless drug screening test. (*See* Compl., at ¶ 1). Plaintiff seeks an order declaring such drug testing to be unconstitutional and an injunction prohibiting such continued testing as a condition of employment with the City. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

The policy at issue is contained in the City's Drug and Alcohol Abuse Policy, HR–98–027 ("Policy"), which provides in pertinent part:

[S]ubsequent to a conditional offer of employment, candidates for all full and part time positions shall be required to undergo a drug test. Any person refusing such a test will not be employed .... Any applicant who fails the initial screening or chooses not to take or fails to pass a test of confirmation shall not be employed by the City of Hollywood and may not apply for employment with the City of Hollywood for a period of twelve (12) months.

(Compl., Exh. B. at 2.) Prospective applicants are informed in advance of the necessity of the test as a condition of employment. (*See* Def.'s Mot. for Summ J., Exh. E, Joe Roglieri Depo. at 67–68). Currently, prospective employees report to Hollywood Medical Center's Emergency Room to take the drug test, and are directed to an enclosed bathroom where they provide a urine sample for further testing. (*See* Maria Del Pilar Hernandez Depo. at 92–95). No applicant may be employed by the City until he or she has submitted to the screening and received a negative test result.

On or about January 8, 1997, Baron was employed by Interim Accounting Professionals, a temporary accounting agency. While working for Interim, Baron was assigned to perform accounting services for Interim's client, the City, in the Treasury Department. During his three months of temporary employment with the City, Baron received positive work reviews, and his supervisor suggested that Baron apply for a position working directly for the City.

On or around April 7, 1997, the City reached an agreement with Interim to hire Baron directly into the City's own accountant pool. Plaintiff was informed of the City's Policy, and directed to report to the Hollywood Medical Center. Baron refused to submit to the drug test, and as a result, was not hired for the accounting position by the City.

Presently before the Court are the defendant's motion for summary judgment and the plaintiff's motion for partial summary judgment on liability. Both parties agree that there are no genuine issues of material fact. The remaining question of law is the constitutionality of the Policy, specifically whether the City has articulated a "special need" justifying its suspicion-

less drug testing of all new applicants as a condition of employment.

## II. DISCUSSION

### A. Summary Judgment Standard

"Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Swain v. Hillsborough County Sch. Bd.*, 146 F.3d 855, 857 (11th Cir.1998). *See* FED. R. CIV. P. 56(C); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir.1998). "Summary judgment may be based on any evidence which would be admissible at trial." *United States v. Jones*, 29 F.3d 1549, 1552 (11th Cir.1994).

### B. Facial Constitutionality of the City's Policy

When the constitutionality of a policy is facially challenged, the Court must determine "whether the test contemplated by the [policy] can ever be conducted." *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 632–33, n. 10, 109 S.Ct. 1402, 1421 n. 10, 103 L.Ed.2d 639 (1989). In other words, the challenger must "establish that no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

In this case, Baron contends this Policy is facially unconstitutional because there is

no set of circumstances under which the City could demonstrate a special need to require every applicant for employment with the City of Hollywood to submit to suspicionless drug testing.[1]

### 1. Suspicionless Drug Testing

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures .... " U.S. CONST. AMD. IV.[2] It is undisputed that the City's drug testing requirement, as set forth in its Policy, constitutes a "search" within the meaning of the Fourth and Fourteenth Amendments. *See Chandler v. Miller*, 520 U.S. 305, 117 S.Ct. 1295, 1300, 137 L.Ed.2d 513 (1997); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995); *Skinner*, 489 U.S. at 617("[b]ecause it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable, ... these intrusions [are] searches under the Fourth Amendment"). Thus, the question at issue is whether the search is "reasonable."

Generally, "[t]o be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing." *Chandler*, 520 U.S. at 313, 117 S.Ct. 1295. There are exceptions, however, based on "special needs, beyond the normal need for law enforcement." *Id.* at 313–314, 117 S.Ct. 1295. When such "special needs" are alleged, courts must undertake a context-specific inquiry, examining closely the competing private and

---

1. On the other hand, the defendant argues that Baron's facial challenge of its Policy must fail because "there is no question that the government may perform random drug testing on *some* employees," and cites various Supreme Court decisions upholding drug testing requirements. (Reply to Def.'s Mot. for Summ. J., at 1 (emphasis in original)). Although the Court does not dispute this proposition, it does not necessarily follow that the City's Policy is constitutional. The mere fact that courts have upheld drug testing schemes does not speak to whether this particular Policy administered by the City in this particular case is constitutional.

2. By virtue of the Fourteenth Amendment, the Fourth Amendment governs searches by state, as well as federal officials. *See, e.g., Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

public interests advanced by the parties. *See id.* at 305–306, 117 S.Ct. 1295. Thus, "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." *Id.* Thus, in evaluating the constitutionality of the City's drug testing policy, the Court must balance the individual's privacy interests against the government's interest.

### 2. Privacy Interests

In assessing the privacy interests of the employees in drug testing, courts have focused upon the intrusiveness of the procedure. The Supreme Court recognized "[t]here are few activities in our society more personal or private than the passing of urine." *Skinner,* 489 U.S. at 617, 109 S.Ct. 1402.[3] Where a urinalysis is involved, the individual's privacy is invaded both when he or she is required to produce the sample, as well as when the sample is chemically analyzed. *See Knox County Educ. v. Knox County Bd. of Educ.,* 158 F.3d 361, 380 (6th Cir.1998).

In this case, after a conditional offer of employment has been made to the prospective employee, the City requires the individual to submit to and pass a drug test. Although the drug screening procedure in this case is somewhat more invasive than the one involved in *Chandler,* where the candidates could go to their own private doctors for the test, *see Chandler,* 520 U.S. at 310, 117 S.Ct. 1295, relatively

speaking, the City's Policy is only minimally intrusive. For example, potential City employees would have produced the sample in an enclosed bathroom, rather than behind a partition or under the direct view of the monitor, as in other cases upheld by the courts.[4] Also, the test is not conducted randomly on existing employees; only candidates who wish to apply for a position with the City are requested to submit to the screening. Finally, the samples are only analyzed for the same battery of drugs, and not for private medical information. (*See* Aff. Roglieri, at ¶ 7–8). Thus, although recognizing that the drug screening impinges upon the privacy interests of the plaintiff, such intrusion is minimal.

### 3. Government Interest in Testing

In order to justify suspicionless drug testing, the government's special need for drug testing must be "substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion." *Chandler,* 520 U.S. at 306, 117 S.Ct. 1295. Only in cases "where risk to public safety is substantial and real," or where "public safety is genuinely in jeopardy" may suspicionless drug testing be considered "reasonable" for Fourth Amendment purposes. *Id.* at 323, 117 S.Ct. 1295. The government also bears the burden of demonstrating a "clear direct nexus ... between the nature of the employee's duty and the nature of the feared violation." *Georgia Ass'n of Educators v. Harris,* 749 F.Supp. 1110, 1114 (N.D.Ga.1990)(quoting *Harmon v. Thorn-*

---

**3.** However, as one recent case notes "[a]ny body who has stood in line in men's rooms urinals at sports stadiums, public arenas, theaters or public bars understands that the act of urination is not always an altogether private one." *Knox County Educ. v. Knox County Bd. of Educ.,* 158 F.3d 361, 380 n. 25 (6th Cir.1998).

**4.** *See e.g., Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 658, 115 S.Ct. 2386, 2389, 132 L.Ed.2d 564 (1995) (sample produced while

monitor watched the fully clothed male students from behind, or in bathroom stalls for female students; "such conditions mirrored the experience in public restrooms and 'the privacy interests compromised by the process of obtaining the urine sample are in our view negligible'"); *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 661, 109 S.Ct. 1384, 1388, 103 L.Ed.2d 685 (1988)(sample produced behind partition or bathroom stall).

*burgh,* 878 F.2d 484, 490 (D.C.Cir.1989), *cert. den. sub. nom., Bell v. Thornburgh,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990)).

In *Chandler v. Miller,* 520 U.S. 305, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997), the Supreme Court's most recent drug testing case, candidates running for high office in Georgia brought a challenge to a state statute requiring all candidates to submit to and pass a drug test. *See Chandler v. Miller,* 520 U.S. 305, 306, 117 S.Ct. 1295, 1297, 137 L.Ed.2d 513 (1997). Although there was no suspicion or evidence of prior drug use among high official candidates, the state of Georgia argued that it had a "special need" for the drug testing since the use of drugs "draws into question the official's judgment and integrity," "jeopardizes discharge of public functions, including antidrug law enforcement efforts," and "undermines public confidence and trust in elected officials." *Id.* at 318–319, 117 S.Ct. 1295.

In an 8–1 decision, the Court rejected these arguments and found that Georgia did not articulate a "special need" justifying the candidate drug testing:

> ... Georgia asserts no evidence of a drug problem among the State's elected officials, those officials do not typically perform high-risk, safety sensitive tasks, and the required certification immedi-

ately aids no interdiction effort. The revealed need, in short, is symbolic, not 'special', as that term draws meaning from our case law.

*Id.* 117 S.Ct. at 1305.

In this case, the City produces no concrete evidence or history of prior use among its accountants, or municipal employees generally.[5] Nevertheless, the City claims that testing is required to maintain its positive image and provide "tangible assurances that public funds are in good hands and are not in jeopardy of being squandered by impaired employees." (Reply to Def.'s Mot. for Summ. J., at 3). The City's defense of the Policy rests primarily upon perceived dangers of mismanagement of public funds by drug abusing accountants.[6]

In light of *Chandler,* the Court concludes that the City's need is merely "symbolic," and therefore insufficient to establish a special need justifying drug testing. The City's desire to hire employees who have been tested is essentially an effort to provide the same "public confidence" in the City, as Georgia sought for its officials in *Chandler.* The City has not identified any jobs involving the type of "high-risk, safety-sensitive tasks" with potential for immediate injury to others that would justify the need for testing.[7] Apart from

---

**5.** Although evidence of prior use is not mandatory, such a showing is often of persuasive value. *See Chandler,* 520 U.S. at 320, 117 S.Ct. 1295 ("[a] demonstrated problem in drug use, while not in all cases necessary to the validity of a drug testing regime, would shore up an assertion of special need for a suspicionless general search program") (citations omitted); *Aubrey v. School Bd. of Lafayette Parish,* 148 F.3d 559, 563 (5th Cir.1998).

**6.** The City argues that because the position of accountant involves reconciling bank statements, assets and journal entries, individuals impaired by drug use may commit errors in calculation. Also, a drug user may be more likely to embezzle funds to maintain their addiction. Finally, the harm resulting from a "momentary lapse" in judgment or concentration could result in a miscalculation which might seriously affect the City's financial

standing, i.e., qualified audit opinion, undercharging for water and sewer rates. (*See* Def.'s Mot. for Summ. J., at 10).

**7.** Courts have upheld drug testing regimes where jobs involved "high-risk, safety-sensitive tasks." *See e.g., Skinner v. Railway Labor Executives Ass'n,* 489 U.S. 602, 608–613, 109 S.Ct. 1402, 1408–1411, 103 L.Ed.2d 639 (1989)(upheld drug testing for railway employees involved in train accidents and for those violate particular safety rules); *National Treasury Employees v. Von Raab,* 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989)(upheld drug testing of United States Customs employees seeking promotion or transfer to certain positions involving direct drug interdiction); *Knox County Educ. v. Knox County Bd. of Educ.,* 158 F.3d 361, 374–375 (6th Cir.1998)(upheld suspicionless drug testing of public school teachers and adminis-

maintaining the positive image of the City, defendant has not offered any substantial reasons militating in favor of drug testing for all prospective employees. Because this oft-rejected "public integrity sensitive" rationale is all the City offers in support, the Court has no choice but to find the Policy in violation of the Fourth and Fourteenth Amendments.

Further, and perhaps most important, the City has "failed to specifically identify any governmental interest that is sufficiently compelling to justify testing *all* job applicants." *Georgia Ass'n of Educators v. Harris*, 749 F.Supp. 1110, 1114 (N.D.Ga. 1990). The Fourth Amendment requires that the government "connect its interest in testing to the particular job duties of the applicants it wishes to test." *Id.* In order for the Policy to meet constitutional muster, the City would have to list all of its positions and the particular duties of the job that justify drug testing. Although the City has set forth arguments for why drug testing may be necessary in light of the particular job duties for its *accountants*, it has failed to state the nexus between the duties of *all* the other municipal jobs and the necessity for drug testing. As written, the Policy is overbroad because it applies to applicants for all positions with the City of Hollywood, without regard to the particular job classification/duties involved, or distinguishing between jobs that are safety-sensitive versus those that are not. Without identifying a connection between the jobs and the need for testing, the City cannot meet its burden of showing a "special need."

In balancing the interests involved in this case, the Court finds that the government's interests in testing are insufficient to outweigh the burden upon individual privacy. Although the intrusion caused by the drug screening is rather minimal, the City has not shown a governmental inter-

est sufficient to justify drug testing of all of its prospective employees. The City's "public integrity sensitive" arguments were insufficient to justify drug testing of applicants for Georgia's highest official positions in *Chandler*, and are likewise insufficient to constitute "special needs" justifying drug testing among applicants for all positions in the City of Hollywood.

Therefore, since the defendant has failed to demonstrate a "special need" for the drug testing, the search is considered unreasonable and in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Accordingly, partial summary judgment is granted in favor of the plaintiff and the Court strikes the City of Hollywood's Drug and Alcohol Abuse Policy, HR–98–027, as unconstitutional.[8] Defendant's motion for summary judgment is denied.

## III. CONCLUSION

Having considered the motion and the pertinent part of the record and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED

Plaintiff's cross-motion for partial summary judgment is GRANTED. [DE 80]

Defendant's motion for summary judgment is DENIED. [DE 75]

---

trators); *Rushton v. Nebraska Pub. Power Dist.*, 844 F.2d 562, 567 (8th Cir.1988)(upheld drug testing of nuclear power plan engineers).

**8.** The Court finds that the Policy is facially unconstitutional. The Court, therefore, does not reach Baron's "as applied" challenge. *See Georgia Ass'n of Educators v. Harris*, 749 F.Supp. 1110, 1115 n. 7 (N.D.Ga.1990).