# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANET LYNN LANIER,
            *Plaintiff-Appellee,*

v.

CITY OF WOODBURN,
            *Defendant-Appellant,*

and

LINDA SPRAUER,
            *Defendant.*

No. 06-35262

D.C. No.
CV-04-01865-KI

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
February 6, 2008—Portland, Oregon

Filed March 13, 2008

Before: Pamela Ann Rymer and Richard A. Paez,
Circuit Judges, and Cormac J. Carney,* District Judge.

Opinion by Judge Rymer

---

*The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

2445

**COUNSEL**

Marjorie A. Speirs and Janet M. Schroer, Hoffman, Hart & Wagner, LLP, Portland, Oregon, for the defendant-appellant.

Steven M. Wilker and Paul W. Conable, Tonkon Torp, LLP, Portland, Oregon, for the plaintiff-appellee.

**OPINION**

RYMER, Circuit Judge:

This appeal requires us to decide whether the City of Woodburn's policy requiring candidates of choice for city positions to pass a pre-employment drug test as a condition of the job offer is constitutional, facially or as applied to Janet Lynn Lanier, the preferred applicant for a part-time position as a page at the Woodburn Library. The district court held that it was not. We agree that Woodburn's policy is unconstitutional as applied because the City failed to demonstrate a special need to screen a prospective page for drugs, and affirm on this basis. By the same token, Lanier did not show that the policy could never be constitutionally applied to any City

position. We reverse the district court's order to the extent it implies otherwise, and remand for its declaratory judgment to be clarified so that it is consistent with our holding.

I

In February of 2004, Lanier applied to be a page at Woodburn's public library. Pages perform tasks such as retrieving books from the book drop and returning them to the shelves. Occasionally, they may staff the desk in the youth services area, where materials for children and teenagers are housed. Woodburn gave Lanier a conditional offer of employment, subject to successful completion of a background check and pre-employment drug and alcohol screening.

Woodburn's Personnel Policies and Procedures Manual has provided for pre-employment drug and alcohol tests since 2002. It provides:

> *Drug and Alcohol Tests:* As a drug-free workplace (see Section 11.17[1]), The City of Woodburn requires a pre-employment drug and alcohol screen for all prospective applicants. The candidate of choice for a City position must successfully pass the drug and

---

[1]Section 11.17 states:

The City of Woodburn considers its employees to be its most valuable asset, and is concerned about their safety, health, and well-being. In keeping with this commitment, the City of Woodburn has a strict policy regarding the inappropriate use and possession of drugs and alcohol. Substance abuse can impair employee performance and general physical and mental health, and may jeopardize the safety of co-workers and the general public.

Among other things, it prohibits use of a controlled substance on city property or during work hours. It allows testing where the City has reasonable suspicion that an employee is under the influence, and searching where the City reasonably suspects that controlled substances may be found.

alcohol screen as a condition of the job offer. The confirmed presence of any illegal drug or alcohol in a urine sample will be cause for disqualifying an applicant.

*Id.*, § 11.14.B.(2). According to Woodburn, this policy was adopted because some department heads, based on their experience with employees who had been under the influence at work, believed that the use of drugs or alcohol had a negative impact on job performance and thought that all prospective employees should be subject to screening to deter such use. In addition, the Manual provides for an "extensive" pre-employment investigation of an applicant's employment and criminal history for positions identified as "security sensitive." Manual, § 11.14.B.(1). "Security sensitive" positions include "[a]ny position that is responsible for the supervision or control of juveniles (all positions in the Recreation and Parks Department Pool and Recreation Divisions and in the Library)." *Id.*, Appendix B.

Lanier wanted to accept the page position she was conditionally offered, but declined to be tested. Woodburn rescinded the offer. Lanier then brought this action, alleging violation of her rights under the Fourth Amendment to the United States Constitution and under Article I, Section 9 of the Oregon Constitution.[2]

The district court granted qualified immunity to the Library Director (a ruling that is not on appeal), and summary judgment in favor of Lanier. It also entered a declaratory judgment which states that the City's policy is unconstitutional "to the extent the policy is warrantless, suspicionless, and is unsupported by a special need that outweighs reasonable expectations of privacy." This timely appeal followed.

---

[2]The parties agree that these provisions are co-extensive for purposes of the issues on appeal.

II

**[1]** There is no question that Woodburn's drug screening policy effects a search within the meaning of the Fourth Amendment. *Chandler v. Miller*, 520 U.S. 305, 322 (1997). No material facts are in dispute. Accordingly, we must determine whether, as a matter of law, the policy "fit[s] within the closely guarded category of constitutionally permissible suspicionless searches." *Id.* at 309.

A

Woodburn maintains at the outset that Lanier conceded away her facial challenge. The City bases this on a colloquy between Lanier's counsel and the district court about the form of declaratory relief. During the colloquy, Lanier's counsel stated that he did not believe the court's summary judgment opinion "foreclosed the possibility that there could be positions for which there would be an application that would be constitutional under the Supreme Court's jurisprudence," and requested a judgment declaring the policy unconstitutional as applied to Lanier "to the extent" there was a need for the declaratory judgment to be tailored for the position she was offered. However, we do not take this as a concession with respect to facial validity. As we read the exchange, counsel's statement had to do with his view of the court's ruling, not of the City's policy.

**[2]** On the merits of the facial challenge, Lanier argues that there is no set of circumstances under which the City's policy would be constitutional as applied to *every* applicant for *all* jobs. She relies on *Baron v. City of Hollywood*, 93 F.Supp.2d 1337 (S.D. Fla. 2000), which applies this standard to a similar municipal policy. However, the test prescribed by the United States Supreme Court requires a party asserting a facial challenge to show that "no set of circumstances exists under which the [policy] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also S.D. Myers, Inc. v. City*

*and County of San Francisco,* 253 F.3d 461, 467-68 (9th Cir. 2001). Thus, a policy of general applicability is facially valid unless it can *never* be applied in a constitutional manner. *Cf. Int'l Bhd. of Teamsters v. Dep't of Transp.*, 932 F.2d 1292, 1303 (9th Cir. 1991) (noting that we "decide only the narrow question of whether these drug tests 'can *ever* be conducted' without offending the fourth amendment.") (emphasis in original). Lanier's version would turn *Salerno* on its head, which we decline to do. As Lanier makes no serious *Salerno* argument, and suggests no concrete reason why Woodburn's policy could not constitutionally be applied to jobs that, for example, require the operation of dangerous equipment, *see Int'l Bhd. of Teamsters*, 932 F.2d at 1303, we cannot say that the policy is invalid on its face.

### B

Woodburn posits that it has a substantial and important interest in screening library pages for three reasons: drug abuse is one of the most serious problems confronting society today, drug use has an adverse impact on job performance, and children must be protected from those who use drugs or could influence children to use them. No doubt these problems are worthy of concern, but there is scant, if any, indication that on account of them, the City has "special needs" of sufficient weight to justify an exception to the Fourth Amendment's requirement of individualized suspicion. *Chandler*, 520 U.S. at 314; *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617, 619 (1989).

**[3]** *Chandler* makes clear that the need for suspicionless testing must be far more specific and substantial than the generalized existence of a societal problem of the sort that Woodburn has posited. In *Chandler*, the State of Georgia sought to subject candidates for public office to suspicionless testing to show its commitment to the war against drugs. Like Woodburn, Georgia asserted no evidence of a drug problem among the targeted population, and the officials who were required

to pass a drug test were neither involved in interdiction, nor did they typically perform "high-risk, safety-sensitive tasks." *Chandler*, 520 U.S. at 321-22. It follows here, as in *Chandler*, that "[t]he need revealed, in short, is symbolic, not 'special,' as that term draws meaning from our case law." *Id.* at 322.

**[4]** While a demonstrated problem of drug abuse might "shore up" an assertion of special need, *id.* at 379, Woodburn's showing of an impact on job performance consists of unspecified difficulty with employees under the influence experienced by a few department heads over the years, and one library employee in twenty-three years who had to undergo rehabilitation on a couple of occasions. Again as in *Chandler*, "[n]otably lacking in [the City's] presentation is any indication of a concrete danger demanding departure from the Fourth Amendment's main rule." *Id.* at 318-19.

**[5]** Finally, the City has an obvious interest in protecting children, yet the link that Woodburn identifies between that interest and a position as part-time library page is tenuous at best. A page may staff a youth services desk for an hour or so when needed, and children may be in the library unattended, but there is no indication that the library has any *in loco parentis* responsibility for those children, that children's safety and security is entrusted to a page, or that a page is in a position to exert influence over children by virtue of continuous interaction or supervision. For these reasons, Woodburn's reliance on *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 158 F.3d 361 (6th Cir. 1998), is misplaced. In *Knox*, the Court of Appeals for the Sixth Circuit upheld Knox County's program of conducting suspicionless drug testing of teachers and administrators because of the unique role that teachers play in the lives of school children; the *in loco parentis* obligations imposed upon them; and the fact that by statute, teachers in Tennessee were charged with securing order such that they were "on the 'frontline' of school security, including drug interdiction." *Id.* at 375. It is evident (at least on this record) that a part-time page, who could be a

high school student herself, has no such role in the City of Woodburn.

[6] Woodburn submits that all library positions are "safety-sensitive" because Appendix B to its Policy and Procedures Manual says so. However, the Manual does not define "safety-sensitive," nor is there any evidence that, regardless of how conceived, a page position *is* safety-sensitive. As we have explained, it does not appear to be in the same sense that, for instance, a teaching position was thought to be safety-sensitive in *Knox County*. Nor does anything in the record suggest that the job of a library page in the City of Woodburn is comparable to jobs where courts have allowed testing on account of safety sensitivity. Jobs are considered safety-sensitive if they involve work that may pose a great danger to the public, such as the operation of railway cars, *Ry. Labor*, 489 U.S. at 628-29; the armed interdiction of illegal drugs, *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 677-78 (1989); work in a nuclear power facility, *IBEW, Local 1245 v. United States NRC*, 966 F.2d 521, 525-26 (9th Cir. 1992); work involving matters of national security, *AFGE Local 1533 v. Cheney*, 944 F.2d 503, 506 (9th Cir. 1991); work involving the operation of natural gas and liquified natural gas pipelines, *IBEW, Local 1245 v. Skinner*, 913 F.2d 1454, 1461-63 (9th Cir. 1990); work in the aviation industry, *Bluestein v. Skinner,* 908 F.2d 451, 456 (9th Cir. 1990); and work involving the operation of dangerous instrumentalities, such as trucks that weigh more than 26,000 pounds, that are used to transport hazardous materials, or that carry more than fourteen passengers at a time, *Int'l Bhd. of Teamsters*, 932 F.2d at 1295. The work of a page, so far as the record discloses, entails nothing of this order of magnitude.

[7] We conclude that Woodburn has not articulated any special need to screen Lanier without suspicion. This is the "core issue." *Chandler*, 520 U.S. at 317-18. Beyond it, we discern no substantial risk to public safety posed by Lanier's

prospective position as a part-time library page. Consequently, we need not pause over the City's remaining points — that invasion of Lanier's privacy interests is slight given the minimally intrusive form of testing, that the testing would have occurred pre-employment, and that she was in any event subject to an extensive background check which further diminished any expectation of privacy she may reasonably have had. We express no opinion as to the weight of these considerations, if any, in a different case.

## III

**[8]** Woodburn submits that the declaratory judgment cannot stand even if we affirm the district court's decision by holding that the City's policy is unconstitutional as applied. We agree. The declaration is unclear: It seems merely to reiterate the Fourth Amendment standard for *Chandler* searches rather than to declare either that Woodburn's drug screening policy is unconstitutional as applied to Lanier, or that the policy is facially unconstitutional. We have held that there is no basis in this case for concluding that the City's policy is facially invalid, so the declaratory judgment goes too far to the extent that it is susceptible to this interpretation. Therefore, we vacate the judgment, and remand so that the district court may enter a new judgment declaring only that Woodburn's policy is unconstitutional as applied to Lanier.

AFFIRMED IN PART; REVERSED, VACATED AND REMANDED IN PART.